H. B. Sproul Construction Co., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Angelo Sansone, Respondents.

414

Argued December 8, 1980, before Judges MENCER, BLATT and MacPHAIL, sitting as a panel of three.

*Kathleen Lenahan,* with her, *John R. Lenahan, Jr., Lenahan and Dempsey,* for petitioner.

*Angelo Sansone,* respondent for himself.

PER CURIAM OPINION July 8, 1981:

The employer[1] appeals here from an order of the Board[2] reversing the decision of the referee which had suspended compensation payments to the claimant.[3] The suspension was ordered by the referee because of the claimant's failure to submit to a medical examination at the employer's request in the course of the claimant's petition for modification of an earlier order.

In 1972, the claimant was awarded workmen's compensation benefits on the basis of total disability as the result of an injury sustained in the course of his employment.[4] On April 9, 1973, after a hearing on the petition of the employer's insurance carrier to terminate benefits, the referee modified the award from total disability to a 30 percent partial disability and the Board affirmed this determination. The claimant did not appeal. The claimant filed a petition on March 11, 1975, however, to modify the award from partial to total disability.

At a hearing on May 6, 1975, after both the claimant, appearing pro se, and his medical witness had testified and the claimant had rested, the employer asked that the claimant be examined by Dr. William A. Black, and the claimant refused. On January 16, 1976, upon the further petition of the employer, the Board ordered the claimant to appear for examination by Dr. Black. The claimant again refused and the

---

[1] H. B. Sproul Construction Company.

[2] Workmen's Compensation Appeal Board.

[3] Angelo Sansone.

[4] The record indicates that the claimant, a reserve Scranton policeman performing special traffic duty for Sproul Construction Company, was injured when a "large heavy guide cable tore loose from a cable carrier and wrapped around his chest and neck like a snake."

employer then petitioned the referee to suspend compensation until such time as the claimant complied with the Board's order which was done. Dr. Black eventually examined the claimant on October 4, 1977 and testified at a hearing on the claimant's petition for modification held on January 1, 1978.[5] At this hearing, the employer then requested that the claimant be examined by a second doctor, a Dr. Park, and the hearing was continued pending this second examination. On January 16, 1978 the referee issued an interim decision reinstating the claimant's partial disability payments which had been suspended during the period the claimant had refused to be examined by Dr. Black.[6] The claimant refused to submit to the second examination and on April 19, 1978 the Board, upon petition of the employer, once again ordered him to appear for such examination. He continued to refuse, and the employer again petitioned to have the award suspended. Then, after a hearing on this petition, at which the claimant appeared but refused to remain, the referee, saying that he acted pursuant to Section 314 of the Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §651, suspended compensation as of May 11, 1978, the date of the claimant's unkept appointment with Dr. Park.

Upon appeal from this suspension of May 11, 1978, the Board deemed the claimant's refusal to appear for a second examination by a second physician to have been reasonable, reversed the referee and remanded the matter to the referee for dcision on the

[5] Although January 1, 1978 was obviously a holiday, it is the date indicated in the record before us.

[6] Section 314 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §651, provides that a claimant who refuses without reasonable cause or excuse, to submit to a Board ordered medical examination, shall be deprived of benefits during the period of his noncompliance.

claimant's petition to modify compensation. The Board pointed out that the employer's petition, which had prompted the Board to order that the claimant be examined by Dr. Park, had not informed the Board that a petition to modify was pending. It also noted that the Board had already ordered the claimant examined by Dr. Black, and that Dr. Black had actually conducted the examination and thereafter testified at the modification proceeding. The Board noted that (1) the claimant had petitioned to modify compensation, (2) he had testified himself and presented his medical witness and (3) Dr. Black had examined the claimant and had testified. Reasoning, therefore, that "[t]he referee should now be able to resolve the claimant's petition to modify filed over four years ago," the Board concluded:

In examining the file in this case, this board is compelled to comment that it may have acted improperly in this case in affirming as amended, on February 21, 1974, the determination of the referee that modified claimant's compensation from total disability to partial disability of 30%, because in said proceeding there was no finding or discussion as to whether work was available to claimant that he could perform within the orbit of his partial disability. Claimant did not file a timely appeal from said decision.

Accordingly, we direct the referee, on the petition to modify now before him, to afford the employer the opportunity, if it so desires, to show availability of work for claimant. This board realizes that claimant asserts he is totally disabled, which, if so, would render the availability of work as impertinent. However, the referee may find claimant still partially disabled and award total disability compensation to

claimant because work is not available to him within the orbit of his disability.

The employer contends now that the Board erred: (1) in reversing the referee's suspension of compensation, (2) in remanding the matter to the referee, (3) in commenting adversely on its own February 21, 1974 order, and (4) in then "accordingly" directing the referee to afford the employer the opportunity, if he so desired, to show the availability of work within the orbit of the claimant's disability.

It is well settled that a remand order of the Board is interlocutory and, therefore, unappealable. *Murhon v. Workmen's Compensation Appeal Board,* 51 Pa. Commonwealth Ct. 214, 414 A.2d 161 (1980). Objections to the remand order, therefore, would not properly be before us at this time. This is not to say, however, that the appeal here which is from the Board's order reversing the referee's suspension of compensation is not now properly before us. The Board's order clearly had two aspects and each must be separately considered: (1) the suspension of benefits and (2) the remand.

The suspension of benefits arose out of the claimant's refusal to submit to a second examination by a second doctor, and, in view of his ongoing refusal to be so examined and of the continuance and suspension ordered by the referee, he has been in effect precluded from presenting the merits of his claim.

Section 314 of the Act provides in pertinent part: The board may at any time after such first examination, upon petition of the employer, order the employe to submit himself to such further examinations as it shall deem reasonable and necessary. . . . The refusal or neglect without reasonable cause or excuse, of the employe to submit to such an examination ordered by the board, either before or after an agreement or

award, shall deprive him of the right to compensation, under this article, for the continuance of such refusal or neglect. . . .

It is well established that an order requiring further medical examination issued pursuant to this section is a matter within the sound discretion of the compensation authorities and nothing less than a manifest abuse of that discretion will therefore justify judicial interference. *Caggiano v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 524, 400 A.2d 1382 (1979).

In *Harrisburg Railways Co. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 485, 333 A.2d 221 (1975), the claimant's wife had testified at termination hearings held before a referee in April and May of 1973 that her husband was physically unable to comply with the Board's December 1972 order that he submit to hospitalization. On August 3, 1973, prior to any further action or rulings, the claimant died and on December 13, 1973 the referee suspended compensation benefits due the claimant as of the prior April. On appeal, the Board rescinded its December 1972 order, which had been issued pursuant to Section 314 of the Act, and directed that compensation be paid to the widow for the entire period up until the time of the claimant's death. This Court, in affirming the Board, indicated that it did not view the rescission as a manifest abuse of the Board's discretion sufficient to justify judicial interference and declared that "such benefits cannot be suspended on the basis of a Board order *which is rescinded by the Board.*" (Emphasis in original.) *Harrisburg Railways Co. v. Workmen's Compensation Appeal Board, supra* at 488, 333 A.2d at 223.

In the instant case, the Board, when it finally had all of the pertinent facts before it for the first time, did not deem a second examination by a second phy-

sician to be reasonable and necessary and further determined that the claimant's refusal to submit to such an examination was reasonable and, therefore, not in violation of Section 314 of the Act. Here, as in *Harrisburg Railways Co. v. Workmen's Compensation Appeal Board, supra,* the Board reversed the referee's suspension of compensation upon a finding of reasonable cause for the claimant's noncompliance with the Board's order.

As can be seen from this history of the proceedings, the Board's order on appeal to us now is not an interlocutory remand order which would be controlled by our decision in *Murhon.* Rather, the Board's order here is a reversal of the referee's action in sustaining the employer's petition for suspension of compensation benefits under Section 314 of the Act. Hence, the Board's order on the petition for suspension *is* subject to our review by virtue of its finality on the matter of suspension of payments, and we must affirm it. Insofar, however, as it is an appeal from an interlocutory order only to remand, we will have to quash it.

Once the Board rescinded its earlier order and reversed the suspension, the only procedure then available to the Board was to *return* the matter to the referee for *continuation* of the *interrupted* hearing on the claimant's modification petition, over which the referee *retained* jurisdiction. The suspension order which has been appealed to us here was a final order concerning a proceeding within a proceeding, and the resolution thereof was necessary before the matter could proceed. That part of the Board's order which remands the case to the referee has nothing to do with the suspension of payments which is the subject of the instant appeal but, rather, was a procedural device utilized to achieve a mere returning of the matter to the referee *after* the Board had rescinded its order so that the claimant's modification hearing which has

been pending for six years, could resume. As the Board took pains to point out, it had none of the record before it concerning the claimant's petition for modification and, therefore, was deciding only the question of the suspension of partial disability benefits. We will therefore return the case to the referee[7] for resumption of the hearing on the claimant's modification petition.[8]

## ORDER

AND Now, this 8th day of July, 1981, the appeal of H. B. Sproul Construction Company from the order of the Workmen's Compensation Appeal Board is denied in part and quashed in part. That part of the Board's order which rescinded its order of April 19, 1978 and reversed the referee's suspension of benefits thereunder is affirmed. The petition for review of the Board's remand of the matter to the referee for resumption of the interrupted modification proceeding is interlocutory and not otherwise appealable and is hereby quashed.

Judge WILKINSON, JR. did not participate in the decision in this case.

---

[7] The claimant has indicated that while he desires the assistance of counsel, he cannot afford to pay an attorney and he has been rejected by the Scranton Legal Aid Society. The duties of a referee in such a situation are clearly enunciated in 34 Pa. Code §8111.21 (h):

Whenever any party in interest is not represented by counsel the referee shall advise him as to his rights, aid him in examining his witnesses, and give him all assistance which is compatible with the judicial position of the referee.

[8] In a modification proceeding in which the claimant alleges total disability, he has the initial burden of proving an increase in his disability and that he is incapable of performing his regular employment. Once the claimant has met his burden, the burden shifts to the employer to prove the availability of work which the claimant is capable of obtaining within the orbit of his disability. In the event that the employer fails to meet his burden, an award of total disability is warranted. *Cerny v. Schrader & Seyfried, Inc.*, 463 Pa. 20, 342 A.2d 384 (1975).