Sylvia B. Powell, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs November 18, 1982, to Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Sylvia B. Powell,* petitioner, for herself.

*Gary Goldman,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, February 17, 1983:

Sylvia B. Powell (appellant) appeals here an adjudication and order of the Department of Public Welfare (DPW) denying her request for abatement or modification of her current assessment of liability for the care of her husband (Herbert), an inpatient at Norristown State Hospital.

On August 19, 1980, the appellant was advised that liability for care of her husband was assessed at $220 per month effective as of July 1, 1980. The amount involved is approximately 50% of Herbert's Social Security benefits. Prior to this latest assessment, the liability had been set at $125, which was approximately 33⅓% of said benefits.[1] The appellant filed a request for abatement or modification which was denied by the Office of Mental Health. An appeal was taken from that decision on October 16, 1980 and the

_____

[1] Herbert's Social Security benefits were increased in July of 1980.

hearing officer recommended denial of the appeal on April 29, 1981. This recommendation was followed and the order of the DPW was filed the same day. The appeal to this Court followed.

The appellant had the burden of proving her right to an abatement or modification. *Tartaglia v. Department of Public Welfare*, 52 Pa. Commonwealth Ct. 579, 416 A.2d 608 (1980). And where, as here, the party with the burden of proof has failed below, our scope of review is limited to a determination of whether or not the adjudication was in accordance with law, whether or not the appellant's constitutional rights were violated, *Skehan v. Department of Public Welfare*, 30 Pa. Commonwealth Ct. 419, 373 A.2d 1364 (1977), and whether or not the hearing officer's findings of fact can be upheld without a capricious disregard of competent evidence. *Nunley v. Department of Public Welfare*, 54 Pa. Commonwealth Ct. 10, 419 A.2d 240 (1980).

The appellant, who has proceeded pro se in the matter, argues first that her due process rights have been violated by the DPW's denial of her request for abatement or modification.

Our analysis of the case must, of course, begin with the statutory scheme. Section 501 of the Mental Health and Mental Retardation Act of 1966 (Act), Act of October 20, 1966, Special Sess. No. 3, P.L. 96, 50 P.S. §4501, provides that liability is imposed upon the individual committed, and that the government may recover the expended public funds from that party, subject to the regulations of the department. The DPW regulations, 55 Pa. Code §5404.4,[2] provide that "when the client receives residential services and is the recipient of benefits, 50% of these benefits are assessable...." The 50% figure is not wrought in iron, for a

---

[2] Currently appearing in 6 Pa. B. 2398(1976).

statutory and regulatory scheme exists whereby that assessment can be modified or abated.[3] This scheme speaks in terms of "substantial hardship", "extraordinary circumstances" and the like. Although the ap-

---

[3] Section 504(a)(1) of the Act, 50 P.S. §4504 provides:

(a) Whenever any person receives a service or benefit at any facility under this act wholly or in part at public expense, the secretary is hereby authorized and shall have the power, subject to the approval of the Attorney General, to determine the extent of liability imposed under section 501 or 502,[1] and to abate, modify, compromise or discharge the liability so imposed provided:

(1) He is satisfied that the imposition of such liability would: (i) result in the loss of financial payments or other benefits from any public or private source which a mentally disabled person would receive, would be eligible to receive or which would be expended on his behalf for such liability, or (ii) result in a *substantial hardship* upon the mentally disabled person, a person owing a legal duty to support such person or the family of either, or (iii) result in a greater financial burden upon the people of the Commonwealth, or (iv) create such a financial burden upon such mentally disabled person as to nullify the results of care, treatment, service or other benefits afforded to such person under any provision of this act. (Emphasis added.)

55 Pa. Code §5405.31, currently at 6 Pa. B. 2398-99 (1976) provides:

*Only in extraordinary circumstances* will consideration be given to abatement or modification of liability in accordance with the following criteria:

(a) Debts, if incurred prior to initial assessment. For example: monthly payments on loans, excluding payments on a mortgage and one car, equal or exceed the balance of the net monthly income after allowances.

(b) *Unforeseen circumstances* over the client and/or his legally responsible relatives have no control. For example: loss from fire not covered by insurance.

(c) The recommendation of the mental health or mental retardation professional as outlined in §5403.1.

(d) Assessment of liability in excess of $250.

(e) *Extraordinary circumstances meriting special consideration.* (Emphasis added.)

pellant asserts that these circumstances exist, *e.g.* commuting expenses to visit her husband and her son's medical college expenses, the hearing officer found that, in addition to her husband's Social Security payments, the appellant has a gross weekly income of $225. The hearing officer heard the testimony at the hearing, and held that the alleged extraordinary circumstances were not documented. Inasmuch as the appellant clearly had an opportunity to demonstrate the circumstances which would warrant abatement or modification and failed to carry her burden, *Tartaglia*, we cannot say that due process was denied her.

The appellant argues next that the hearing officer erred in not reviewing the assessment for the previous year. There is clearly no error here, for 55 Pa. Code §5403(a)[4] states: "there shall be a redetermination of liability as frequently as warranted ..., but no less frequently than: a. Every 12 months for clients receiving continuous service...."

The appellant argues further that the DPW denied her due process pursuant to the Federal Social Security regulations governing use of benefits by a representative payee in their assessment of liability based on these benefits. Her brief discusses many Social Security regulations which have little or no relevance to this proceeding. One regulation, however, which was not noted by the appellant but was cited to this Court by the DPW, provides that, when the recipient is hospitalized, the payee shall "give highest priority to expenditure of the payments for the current maintenance needs of the beneficiary, including the customary charges made by the institution...." 20 C.F.R. §404.1606 (1980). We agree with the DPW that the Act and its regulations are not inconsistent with the Federal plan, and accordingly, cannot find a violation of due process here.

---

[4] Currently at 6 Pa. B. 2397 (1976).

The appellant argues finally that the DPW adjudication was untimely pursuant to 55 Pa. Code §5405.4,[5] which provides:

> Hearings are scheduled for as early a date as possible so that prompt, definitive and final administrative action *will be taken* within 60 days from the date of the hearing request. The appellant, his representative if any, and the Institution or County Mental Health/Mental Retardation Unit, as applicable are notified in writing of the time, date and place of the hearing. The notice is sent at least a week in advance of the hearing. (Emphasis added.)

We agree with the appellant that the decision herein was clearly untimely and, given the mandatory language of the regulation, we believe that the regulation should have been scrupulously followed. The appellant filed a request for hearing on October 16, 1980. After a hearing on December 19, 1980, it was not until April 29, 1981, four months after the hearing date and six months after the request for a hearing, before definitive and final administrative action was taken. We believe the appellant was clearly prejudiced by this delay and, inasmuch as the final decision as to modification or abatement was not reached until April 29, 1981, the appellant should not be required to submit the reassessed figure (50%) prior to that date. We hold that the previous percentage (33⅓%)[6] remained in effect through April 29, 1981, at which time, the reassessment percentage of 50% takes effect.

Accordingly, the adjudication of the DPW is affirmed except that for the period from July 1, 1980 to April 29, 1981, the appellant is to be assessed at 33⅓% of the Social Security benefits.

---

[5] Currently at 6 Pa. B. 2399 (1976).

[6] The monetary figure appears to be $125.

162

ORDER

AND Now, this 17th day of February, 1983, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.

However, from the period beginning July 1, 1980 and ending April 29, 1981, the Department of Public Welfare is directed to assess liability at 33⅓% as per the previous assessment.