557 A.2d 1160

Warren Mulgrew, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 6, 1989, before Judges COLINS and MCGINLEY, and Senior Judge BARBIERI, sitting as a panel of three.

*H. Barry Bier*, for petitioner.

*Edward P. Carey*, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, April 27, 1989:

Warren Mulgrew (Mulgrew) petitions for review of the March 11, 1988 final order of the Department of Public Welfare (DPW), Office of Hearings and Appeals, which denied Mulgrew's request for financial abatement or modification of liability assessed against him for care at Farview State Hospital (Farview) during an involuntary hospitalization.

Issues presented for review pertain to the scope of DPW's duty to assist a resident of a state mental institution who requests an abatement or modification of assessed liability; the exempt or non-exempt status of service-related veterans' administration disability benefits (VA benefits) where DPW seeks only to assess liability; and prejudice, if any, due to delay between a request for a fair hearing and DPW's decision. The final order of DPW's Office of Hearings and Appeals is affirmed.

Mulgrew, a recipient of VA and Social Security disability (SSD) benefits for service-related schizophrenia, was involuntarily committed to Farview on August 13, 1986 by Allegheny County to determine his competency to stand trial on criminal charges. Allegheny County was billed a per diem rate from August 13, 1986 to November 10, 1986. After a finding of incompetency, Mulgrew was returned to Farview.

DPW thereafter unsuccessfully attempted to elicit financial information from Mulgrew, via his son, representative payee for Mulgrew's VA and SSD benefits. DPW subsequently sent various notices of assessment to Mulgrew's son pursuant to Section 501 of the Mental Health and Mental Retardation Act of 1966 (Commonwealth Act)[1] for Mulgrew's care at Farview for the period November 11, 1986 through August 31, 1987. These assessments were against both Mulgrew's VA and SSD benefits.[2]

Mulgrew petitioned the Division of Institutional Collections (Division) for review of the liability assessed against his VA and SSD benefits, asserting that state and federal benefits are insulated from Commonwealth claims for care in a state mental institution and requesting

---

[1] Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §4501.

[2] Mulgrew challenges only those assessments against his VA benefits.

an abatement or modification of assessed liability. The Division denied Mulgrew's request and, on March 13, 1987, Mulgrew requested a hearing with DPW's Office of Hearings and Appeals. After administrative hearings on September 17, 1987 and January 19, 1988, a DPW Hearing Officer found that Mulgrew failed to present evidence to substantiate his claims and that federal benefits are not exempt from Commonwealth claims for care and maintenance. Accordingly, the Hearing Officer denied Mulgrew's request for an abatement or modification of assessed liability.

By final order dated March 11, 1988, the Acting Director of DPW's Office of Hearings and Appeals adopted the Hearing Officer's findings and conclusions, whereupon Mulgrew petitioned this Court for review.[3]

Mulgrew initially challenges the propriety of the review of his assessed liability, claiming that he incurred expenditures for legal representation in connection with criminal proceedings and that those reviewing his request neither determined the amount, reasonableness, or necessity of his legal expenditures nor assisted him in accordance with 55 Pa. Code §4310.17(b), which provides in pertinent part that:

> The institutional collections officer *may* assist the client ... in the preparation of a request for an abatement or modification, *if so requested*. This *may* include checking to insure the inclusion of all required information, typing the final copy, and forwarding the request to the Secretary of Public Welfare or his designee. ... (Emphasis added.)

---

[3] This Court's scope of review is limited to determining whether or not the necessary findings of fact are supported by substantial evidence, the adjudication is in accordance with law, and the petitioner's constitutional rights have been violated. *Selelyo v. Department of Public Welfare,* 34 Pa. Commonwealth Ct. 235, 382 A.2d 1308 (1978).

Nothing of record indicates that Mulgrew or his son requested such assistance. No evidence was presented as to any legal expenses allegedly incurred by Mulgrew as a result of his criminal proceedings or as to the identity of Mulgrew's attorney. Neither Mulgrew, his son, nor any other witness on Mulgrew's behalf participated in the hearings. Moreover, the regulation cited by Mulgrew does not obligate DPW to procure and produce evidence of alleged debts incurred by Mulgrew for legal representation in a criminal matter.[4] DPW thus acted properly in not considering Mulgrew's alleged counsel fee expenditures as a basis for an abatement or modification of assessed liability in view of Mulgrew's failure to substantiate his claim. *See Weychert v. Department of Public Welfare,* 122 Pa. Commonwealth Ct. 6, 551 A.2d 605 (1988), (the petitioner bears the burden to establish grounds for an abatement).[5]

Mulgrew next asserts that his VA benefits are exempt from Commonwealth claims for his care and maintenance at Farview. Section 3101(a) of the Veterans' Benefits Act (Federal Act), 38 U.S.C. §3101(a), provides, *inter alia,* that VA benefits are exempt from creditors' claims and are not liable to attachment, levy, or seizure through any legal or equitable process. Pennsylvania, however, imposes liability upon mental health patients for their care

---

[4] Mulgrew notes that he had a right to legal counsel of his choice in the criminal proceedings and presumably contends that DPW undermined that right. There is no question that Mulgrew enjoyed such a right. However, he failed to present any evidence to substantiate legal expenditures allegedly incurred in exercising this right.

[5] Section 504(a) of the Commonwealth Act, 50 P.S. §4504(a), authorizes the Secretary of DPW to abate, modify, compromise or discharge a mental patient's liability for repayment of funds expended provided the Secretary is convinced that imposition of full liability would result in substantial hardship to the mental patient or create such a financial burden as to nullify the results of care and treatment rendered.

and maintenance pursuant to Section 501 of the Commonwealth Act, 50 P.S. §4501. This section provides in relevant part that:

> Whenever public funds are expended under any provision of this act on behalf of a mentally disabled person, the governmental body expending such funds may recover the same from such person ... and for this purpose liability is hereby imposed upon such person admitted, committed or otherwise receiving any service or benefit under this act for all costs, payments or expenditures with reference thereto, ...

As stated in *Weychert v. Department of Public Welfare,* assessment of liability and collection of payment are distinct matters. Although the United States Supreme Court recently announced in *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204 (1988) that a state could not attach a prisoner's social security benefits to defray the cost of maintaining its prison system, nothing therein prohibits a state from assessing liability against a similarly situated party, as Mulgrew, for care and maintenance received at a state mental institution. It thus appears that a state may secure such reimbursement if accomplished through means other than attachment, levy or seizure. Accordingly, Section 501 of the Commonwealth Act is not clearly inconsistent with Section 3101(a) of the Federal Act and thus no conflict exists under the Supremacy Clause as in *Bennett*.

Mulgrew's final challenge pertains to prejudice which he allegedly suffered due to the untimeliness of DPW's adjudication. In support, Mulgrew cites a DPW regulation which he claims is found at 55 Pa. Code §5405.5[6] and *Powell v. Department of Public Welfare,* 72 Pa. Commonwealth Ct. 156, 455 A.2d 1287 (1983).

---

[6] This DPW regulation was initially found at 6 Pa. B. 2399 (1976) and was referred to therein as §5405.4.

The DPW regulation relied upon by Mulgrew directed that hearings be scheduled at the earliest possible date to ensure final administrative action within sixty days of the date of the hearing request. However, this regulation appears to have been eliminated in December 1982 and replaced by regulations found at 55 Pa. Code §§4310.21 and 4310.22, neither of which provide specific time constraints for final administrative action by DPW. *See* 12 Pa. B. 4149 (1982).

Nonetheless, assuming *arguendo* that the regulation in question applies, we do not believe this Court's decision in *Powell* is controlling here. In *Powell*, this Court stated that the mandatory language of the subject regulation required it to be scrupulously followed. There, the petitioner filed a request for a hearing on October 16, 1980. The hearing was held on December 19, 1980 and final administrative action was rendered on April 29, 1981, four months after the hearing date and six months after the request for a hearing. This Court concluded that the petitioner was clearly prejudiced by this delay.

Here, Mulgrew requested a hearing in March 1987. The hearing was held on September 17, 1987 and continued on January 19, 1988, evidently due, in part, to the late arrival of Mulgrew's counsel at the September 17th hearing. The hearing record was closed upon receipt of Mulgrew's brief on March 2, 1988 with final administrative action rendered March 11, 1988. Although substantial time lapsed between Mulgrew's request for a hearing and the initial hearing, we note that final administrative action was taken nine days after the close of the hearing record unlike *Powell*. It also appears that Mulgrew's counsel contributed to the delay. Moreover, it is difficult to envision in what way Mulgrew was prejudiced since he had full use of his VA benefits throughout the relevant period. We are therefore unable to find that Mulgrew was

clearly prejudiced by any delay under these circumstances.

As we have detected no error in the proceedings below, the final order of DPW's Office of Hearings and Appeals is affirmed.

ORDER

AND NOW, this 27th day of April, 1989, the March 11, 1988 final order of the Department of Public Welfare, Office of Hearings and Appeals, is affirmed.

Judge COLINS dissents.